Good morning, your honor. May it please the court. Greg Nevins on behalf of Mark Horton here. My plan, and I'm tentative as it may be, is that I'm going to speak for seven minutes. Ms. Coleman, representing the EEOC, will speak for five minutes. Of course, as you've noticed from her briefs, they address the particulars of the coverage arguments, the specific three arguments why the commission has determined that it's sex discrimination to engage in sexual orientation discrimination. Of course, then Mr. Perryman, on behalf of MGM, will have his 15 minutes, and I'm hoping to have three minutes of rebuttal. Do we have separate time? Because you get 15 minutes total. 15 minutes total. But Ms. Coleman has five of my minutes, according to the court. You self-regulate that. Yes, I will do my level best, your honor. I appreciate it. You self-regulate 15 minutes, and I don't like this separation. So, your honor, I want to return the court to the simplest possible ways of resolving this. I believe that the most momentous case in Title VII history was Phillips v. Martin Marietta, a very, very simple case, but which evoked a radical departure from what the Fifth Circuit said, which said it was perfectly okay for Martin Marietta to allow men with small children to keep their jobs but fire every woman with a small child. And the court said, very simply, the notion that Title VII can be read as, quote, permitting one hiring policy for women and another for men, each having preschool-age children, is where the Fifth Circuit made its mistake. And I submit to you, if you just change having preschool-age children to having a husband or having a male life partner, then you have the exact same case. Each of those situations, certainly raising children has always been recognized as a constitutional right that the person is exercising. And certainly in a hypothetical situation where we have Marsha Horton, her right to have a husband and her right to have a male life partner has also always been recognized as a constitutional right. What has changed more recently... Not always as a constitutional right. Well, ever since the freedom to marry was first addressed in the Supreme Court, and I mean for different sex individuals, from Skidder v. Oklahoma, marriage has always been viewed as a fundamental right. Of course, what has changed is in 2015 with the Obergefell decision, which happened before any of the facts of this case happened, is that that now has been extended to same-sex couples. So now Marsha Horton is also exercising a fundamental right. The thing is, I don't know that we get to any of these arguments unless you can convince me that Williamson isn't binding on us. It's pretty categorical. Language is categorical in Williamson. It absolutely is, Your Honor. But let me be clear. I will happily grant you that the district court in Williamson thought sexual orientation discrimination was not covered by Title VII, and the district court in the Schmetting case also believed that. And in each of those situations, it was up to Mr. Schmetting and Mr. Williamson to decide whether they wanted to depress that issue and contest it before this court. And each of them decided not to. Mr. Williamson came before this court invoking its in-bank decision in Bibbs v. Block and said where the district court got it wrong is that they didn't address whether I had a race discrimination claim. And this court said, well, okay, but you're wrong and your race discrimination claim is wrong. But here's the problem I'm having. If you look back at it, and you can correct me if I'm wrong about this, my understanding is the employer there said, no, it's not race discrimination. This is sexual orientation discrimination. Maybe not in those starker terms. That's not protected. And so it gets up here, and we have perhaps a mixed motive case, and our court says, well, sexual orientation discrimination is not covered. So now we're left with race discrimination. I don't see how that is dicta, because they're taking an argument that was made in the district court, dismissing it in the course of their reasoning, and then moving on to the core issue on appeal. And, Your Honor, what I would submit is a fundamental rule of appellate procedure is that the appellant is really charged with, and certainly has the right to frame what they are going to contest and not contest about the district court's opinion. I feel very confident, and I thank the Lewis Rice firm for providing the court with Mr. Williamson's brief, which made it pollusively clear that Darrell Williamson was making no argument to this court that sexual orientation discrimination was covered by Title VII. That's true, but you can't change the underlying facts. You can't change the arguments that were made in the lower court. And here, the arguments made in the lower court were, at least on the employer's side, all about sexual orientation discrimination. It's why we can affirm on any ground supported by the record. If the respondent comes up with an argument, that's still part of the case, even if the appellant didn't raise it. Well, but first off, that's not dispositive. First off, if you only bring one claim, and the record is crystal clear that Darrell Williamson only brought a race discrimination claim. So the employer was basically trying to do a diversionary attack and say, no, this is what he's really arguing. Sexual orientation, right. They don't get to do that. Granted, if Darrell Williamson had come before this court and said, I'm making both claims, but Darrell Williamson said no. Darrell Williamson said that the problem with the district court is that they went off on the wrong tangent. They fell for this diversionary tactic that the employer tried. You know, Summers is not nearly as prone to the dicta argument as perhaps Williamson is. Oh, oh. The case that you relied on, which had a much more clearly articulated and on-point analysis. Yes, well, and your Honor. So if Williamson isn't controlling, but Summers is, we're back to where Judge Strauss was. With an important exception, your Honor. I do believe it's very important to distinguish between the two things of gender identity and sexual orientation discrimination. And this is, if you look at what's happened in other courts, like for instance, take a look at what happened in the Evans case where the 11th Circuit had already decided. I'm not sure we're talking about the definition of sex in the statute. And you just say, well, it's very different. Sexual orientation and gender identity. I'm not sure with the interpretive problem we're facing, what you said is not that clear to me at all. Your Honor, but what I submit to you, I mean, if you're going to read Summers as prohibiting any, as adopting this, you know, first off, its holding is very clear that the transsexual loses her case. And I submit to you that, so. Well, among other things, it said 10 times Congress has declined to amend the statute to adopt the interpretation you're urging us today. And, Your Honor. That's rather significant. In fact, that's even more controlling than the decision on the facts for me. Well, and I would submit to you that, of course, Summers' decision was eight years before the Supreme Court in the pension benefit guarantees case said that you should not rely on subsequent legislative history to determine the meaning of the statute. And the on-call decision charged this court and every other court with entertaining all claims that meet the statutory requirements. And here it's differential treatment on the basis of sex. It satisfies that. I will reserve the last two minutes of my time and allow Ms. Coleman to. Thank you, Your Honors. Ms. Coleman? May it please the court. Gail Coleman for the Equal Employment Opportunity Commission. Even if this court concludes that the language in Williamson was not dicta, that case has now been abrogated. It cannot be reconciled with on-call or with Price Waterhouse. Schmetting noted that Williamson was a pre-on-call opinion and thereby implicitly called into question its continuing vitality. Moreover, there is no indication that the Williamson panel was aware of Price Waterhouse. Indeed, its citation to DeSantis suggests that it was not, as the Ninth Circuit itself recognized the next time DeSantis came up. But we don't do that. I mean, we don't look back at panel decisions. If there's a case that precedes a panel decision, we assume the panel has knowledge of it. Just because you don't cite it doesn't mean you're not aware of it. Even if that is true, on-call was a subsequent intervening opinion. We believe this panel can reach the merits. The only question in this case is whether sexual orientation discrimination is discrimination because of sex. Holding that it is would not necessarily result in Title VII liability in any given case. That is because liability turns on two questions. That's a statutory interpretation argument. That's a policy argument. We're interpreting the words that Congress used in a particular statute for a particular purpose. Correct. At a particular time with a particular legislative history. In terms of the words that Congress used, Congress said because of sex. And Price Waterhouse explains that that means that gender must be irrelevant to employment decisions. And as the EEOC has explained, sexual orientation discrimination means that gender is not irrelevant. And we have given three overlapping, although independently sufficient, reasons. In terms of congressional intent, the Supreme Court said in Pension Benefit Guarantee Corporation, that subsequent legislative history is a hazardous basis for inferring legislative intent. We don't know why Congress doesn't act. And certainly subsequent legislative history says nothing about what the enacting Congress did. On-call, which is a subsequent intervening opinion, was very clear that what matters is the words of the statute. We can depart from the plain language only if the plain language is demonstrably at odds with the intent of the enacting Congress. That's what Ron Pair Enterprises said. And in Henson v. Santander, a 2017 opinion, the Supreme Court said we cannot speculate about what Congress might have done if it faced a question that it never faced. And we do know that there was no discussion in 1964 of sexual orientation discrimination. Therefore, Congress really did never face this question. We're left with what is the meaning of because of sex. For three reasons, the EEOC believes that because of sex incorporates sexual orientation discrimination. First of all, the very definition of who is gay or lesbian cannot, you can't define it without considering sex. Let me ask you a statutory, straight up statutory interpretation question. It's a little unfair because I'm relying on other statutes. But a lot of states have defined sexual orientation as one of the protected characteristics, a number of them in their human rights acts. A number of states have also gone, and I know this wouldn't cover everybody on sexual orientation discrimination, but have protected marriage. So, for example, they say, you know, if you're fired because of something your spouse does, that that is protected as well. Why isn't that type of language necessary here to protect what you're talking about, the sexual orientation discrimination? In terms of states, some states, including specific language about sexual orientation. And in fact, Congress has in some statutes as well, the Violence Against Women Act. There is nothing wrong with a legislature using what's referred to as a belt and suspenders approach. That doesn't mean that you need to do it both ways. In terms of marriage being protected, Title VII has its protected categories. Marriage is not one of them, and we wouldn't be here arguing that marriage is a protected category. One issue that has come up repeatedly in courts that have looked at sexual orientation discrimination is who should the comparator be? Some courts, or some at this point with the post-Price Waterhouse dissents, have been saying that what should be compared is lesbians to gay men. Clearly, if an employer is treating lesbians, for example, worse than gay men, that would be straightforward sex discrimination. Nobody would disagree with that. However, looking at that comparison does not determine whether sexual orientation discrimination is also a kind of discrimination because of sex. To test for sex discrimination, the only thing that gets changed is sex. Necessarily, if you do that, that will change the sexual orientation of the plaintiff. But that is completely consistent with what the Supreme Court did in Price Waterhouse. In Price Waterhouse, the only thing that was changed was the sex of the plaintiff. The new male plaintiff was left with the same characteristics. He wouldn't walk in a feminine manner. He wouldn't wear makeup. He wouldn't style his hair. In other words, changing the sex of the plaintiff in Price Waterhouse eliminated the gender nonconformity. Just as changing the sex of the plaintiff here eliminates the sexual orientation. That is what made the difference. Looking at it that way, it was clear that sex was the determining factor. Therefore, under the plain language of Title VII, what happened was because of sex. I see that I'm out of time, unless the panel has any further questions. Thank you. Thank you. Mr. Perryman? May it please the Court. I'm Neil Perryman. I represent Midwest Geriatric Management. In this case, with me at table is Philip Mackey. I'll cut to it. We believe the Williamson Court holding precludes further review by this Court. Judge Hamilton had no difficulty finding that this Court squarely held in Williamson that sexual orientation or homosexuality, she put it, is not protected by Title VII. Well, I think you're overstating it a little bit. I mean, I made the argument with the opposing counsel that it's part of the reasoning. And I think you can make that claim based on what was before the district court in Williamson. But to say that's part of the holding, I'm not so sure that's right because that case, at least on appeal, was all about race discrimination. Well, I don't, respectfully, Judge, I don't think that's exactly right. Okay. What Williamson said, it's a very short opinion, as the Court knows. Right. But they said the district court construed Williamson's complaint and his deposition testimony as alleging sexual orientation discrimination. Discrimination because he was homosexual. That's what it says. It then, it was a specific point in the appellate brief of the appellee in that case that homosexuality is not protected by Title VII. It was an issue in the case that was decided. And Williamson, if you read the briefs that were somewhat difficult to obtain, but we were able to get them from the clerk's office, he was comparing himself to white homosexuals. And so the Court, as part of its analysis, determined that homosexuality is not protected by Title VII. There was nothing left. So it's a difficult, if you go back and read the pro se complaint that Mr. Williamson originally filed, it is a hodgepodge for sure. There was an amended complaint that we don't have. But we believe it was a holding. Thirteen district courts believe it's a holding. Eight circuit courts believe it's a holding. No one said it isn't a holding. But we don't really need to go into that because we have the Schmetting case from 1999, which is after both Onkala and Price Waterhouse were decided. In Schmetting in footnote three, another panel of this Court, Judge Bowman and others, squarely held, I shouldn't use squarely to use her language, but said that in Williamson we held that this is not protected. I think they know what they mean. Is that entitled to, I mean, that's an interesting question. Is a later case interpreting an earlier case and saying it's binding, that that earlier case holds something, is that binding on a future panel, even if the second panel were wrong? And I'm not saying they are here. But is that really binding on us if we view what the first case did differently? I think this Court's own interpretation of what's a holding and what isn't is entitled to some weight. But we don't even need to go there. Because what happened in Schmetting is that the district court dismissed the case because it believed the case was predicated upon sexual orientation harassment. I'm sorry? I dissented in Mader because I thought Strauss' question should have been fair game, but the Court said no. I don't think Schmetting can be ignored just because it was interpreting Williamson and we might have interpreted it differently. Correct. And in that case, in Schmetting, the district court had dismissed this case alleging that, or where it held that the plaintiff was really asserting a claim of sexual orientation harassment. Sent it back down. This is post-on-call. They sent it back down and said reconsider this in light of that. And the Court says very clearly that, I'll read it to you. We do not think that simply because some of the harassment alleged by Schmetting includes taunts of being homosexual or other epithets connoting homosexuality, the complaint is thereby transformed from one alleging harassment based on sex, which would be actionable, to one alleging harassment based on sexual orientation, which is not. They let him have another chance at it to remove the allegations of sexual orientation discrimination, which are not actionable under Williamson and every other circuit court that considered the question prior to Baldwin against Fox and these new cases that have come forward in the last three or four years. Based upon the U.S.C.'s new look that they've taken at the statute, which we think clearly says because of sex and not because of sexual orientation. But that's a question I don't think this Court can reach today. So we believe based upon Williamson, Schmetting, and other cases, this Court doesn't need to get into the policy questions about what mixed drinks are and which mixed drink is most like this case, public policy, what societal concerns are, not that they're not important questions for someone to answer, but it's not for this panel. The Court also dismissed plaintiff's claim for religious discrimination. They complained about that in their brief, that the District Court got that wrong. We think the District Court got it right. The only religious discrimination pleaded is that he was gay. He doesn't plead that we knew of his religious beliefs. He claims there were differing religious beliefs. Paragraph 63 through 66 of his complaint doesn't say what those beliefs are. And we believe that the Prowell case and the Padrera case from the Third and Sixth Circuit respectively are correct in that you can't have a religious discrimination case based solely on a claim of sexual orientation discrimination, which is all that is. The Court has no further questions. Thank you. Thank you, Your Honors. Three quick points. I think when it comes to what's a binding decision, I commit the John Murrell case to your consideration. Use the phrase, what is the Court being called to rule on? And I think that's very important here because the language is very clear. The language is against our position, but the Court was not being called to rule on in Schvetting or in Williamson on the question in front of them. The plaintiff appellant in each of those cases unilaterally disarmed and basically said, we're not pushing this issue. I'm willing to take my sexual orientation allegations out of it, and I am asking you to say my gender stereotyping allegations are sufficient, and Darryl Williamson, that I have a race claim. Darryl lost, but this Court focused exactly on what the plaintiff appellant in each case asked them to so that these are not binding holdings. I also want to, the Summers case goes to a very important point that I want to get across here today. In Summers, in a lot of gender identity cases, especially so far back then, there was a suspicion on the part of the courts that there was a broader definition of sex being urged upon the court than just male or female. Let me be very clear to the Court today. We want, you should look at the original public meeting as that methodology is properly used, which is to ask, are any of the words in the statute, do they have a different meaning today than they did when it was passed? Discriminate does not have a different meaning than it did then, and we are accepting male or female as the meaning of the word sex. What we're saying is that it is differential treatment of a female with a husband, a male with a husband now, and now that's clear after Obergefell, whereas it wasn't before. My last point would be that the Prowl decision is a blessing insofar as it is intellectually honest about creating a gay exception to the religious nonadherence claim, and I submit to you that if we were proceeding under the Americans with Disabilities Act, which allows, which specifically charges courts to ferret out claims of anti-LGBT discrimination, we wouldn't have a claim. But there is no exception for sexual orientation claims in the language of Title VII, and it's not up to courts to impose one where Congress has not. Can I ask one? Go ahead. I'll put this down on interesting but perhaps irrelevant. As we all know, there have been at least three cases that were relisted by the Supreme Court. Do any of them have a specific bearing on this case, like the Bostock case, the Altitude Express case, and the Harris funeral? Yes, Your Honor. Bostock and Zarda are exactly the same issue, and tomorrow they're meeting yet again, and they may kick the can down the road yet again, but if they grant that and this court decides that, and Judge Loken has said in the earlier argument today, that you have a lot of things to do and that we would respect that you're holding your hand and not weighing in on that. But to answer your question, Your Honor, it's the exact same issue. So, yes, we should all be paying attention to whether or not they grant cert or deny cert in the Bostock and the Zarda case. Yeah, one more question. The religion issue, I find it, and maybe you can convince me otherwise, but I find it hard to believe that merely alleging that the employers are Jewish is enough to bring a religion claim, and that's all I'm seeing in this record. And, Your Honor, first off, and let's be clear, we have to prove this case up. And the MGM has been consistent from the beginning that you're saying none of this discrimination happened. So we are going to have to prove that the offer was rescinded because of his disclosure that he has a husband. And we think that's sufficient to prevail on the sex discrimination claim, but in order to prevail on the religious discrimination claim, we completely understand that we are going to have to show that it was their religious beliefs that motivated it. And, of course, and Your Honor is making a very apt point that there are many, many different people of the Jewish faith, some of whom are opposed, whose religious beliefs are opposed to same-sex marriage, some of whom are adamantly insupportive. And we do understand that, and the position is, and we know we have to prove that up should we get the opportunity. We thank the court for its time and consideration. Thank you, counsel. The case has been well-briefed, thoroughly argued. We'll take it under advisement.